Vincent E. KLIMASZEWSKI, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

No. 25601.

United States District Court E. D. Pennsylvania.

Sept. 16, 1959.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Richard Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

BIGGS, Circuit Judge.*

This action is brought under Section 205(g) of the Social Security Act, 42 U.S. C.A. § 405(g) by Klimaszewski, a former stevedore, referred to hereinafter as the "claimant", to review a final decision of the Appeals Council, Social Security Administration, Department of Health, Education and Welfare.

On May 2, 1952, the claimant, then 56 years old, was injured while working as a stevedore loading steel aboard a lighter. A cable on a winch broke and a load of steel swung against him and crushed his leg. The claimant is now approximately 63 years of age.

On August 23, 1955, the claimant filed an application with the Bureau of Old-Age and Survivors Insurance to establish disability benefits. The application was denied, the letter of the Assistant Director to the claimant stating that, "The evidence in your file shows that your impairment has not been serious enough to prevent you from doing some kind of gainful work." On January 8, 1957, the claimant again submitted an "Application to Establish Disability Benefits", and also an "Application to Establish Disability". These applications were also denied. The claimant then requested a hearing and a hearing was held, the result of which was a decision by the referee that applications of the claimant for the establishment of a period of disability and disability insurance benefits should be granted. The Appeals Council, *sua sponte*, decided to review the referee's decisions, and upon review, reversed, holding that the claimant was not "entitled to a period of disability under section 216(i) or to disability insurance benefits under section 223 of the Social Security Act", since prior to termination of his specially insured status on June 30, 1954,[1] he was not precluded by reason of his impairment from engaging in any substantial gainful activity.[2] It is this decision that the claimant seeks to have reviewed. The matter is now before the court on cross-motions for summary judgment based on the pleadings and the record of the administrative proceedings.

A letter dated May 18, 1956, from Dr. John Francis Gordon to the claimant's attorneys, includes a description of the injuries sustained by the claimant, a history of the treatment, given, the findings of a physical examination given the day of the letter report, and an opinion as to the claimant's ability to perform work in the future. According to this letter, the claimant was, upon admission to the hospital, found to have severe injuries of the left knee with compound fractures, torn ligaments and lacerations. Five operations have been performed on the claimant,[3] extending from the time of injury to the end of 1955. As a result of the injury and operations, the claimant has 100% limitation of flexion and extension of his left leg at the knee. His left leg is also shortened three-quarters of an inch. At the time of the examination, given the same day that the report letter was written, the claimant complained of severe pain in his back and soreness in the left knee. The letter states in this regard: "The orthopedic examination of this man shows moderate tenderness over the lumbo-sacral area on the left side. There is some spasm of the erector-spinal muscles." Also the condition of the knee has produced some traumatic arthritis. In concluding, the doctor stated: "Due to this ankylosis of the knee, he will never be able to do his usual work as a stevedore which requires squatting and various other positions which he is prevented from doing by the stiffness of the knee

---

* Specially designated.

1. The specially insured status of the claimant is not pertinent in respect to the issue presently before the court. See, however, note 4, infra.

2. "[T]he term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." Section 216 (i), Social Security Act, 42 U.S.C.A. § 416 (i). Section 223, Social Security Act, 42 U.S.C.A. § 423(c) (2).

3. Four of which are directly attributable to his injury.

* * * The only type of work this man could do would be as a night watchman or a desk job."

In a letter dated April 21, 1958, to the claimant's attorneys, Dr. Gordon explained: "Of course, in order to be qualified to perform 'desk' work this man would have to have the education and training necessary to do this work and if he does not, then obviously he could not do this work.

"As to his ability to work as a night watchman, I should like to clarify this opinion. When I used this job classification, I was thinking in terms of this job as being one in which a minimal amount of standing, walking and moving about was necessary. Should work as a night watchman require more than such minimal movement, Mr. Klimaszewski would be unable to do this work because of the condition of his left leg."

For purposes of establishing valuation for disability benefits from the Veterans Administration, the claimant was given a physical examination on March 17 and 18, 1953. Dr. Raymond O. Stein, an orthopedist, reported: "At the present time on examination he can walk without the brace. There is a scar over the medial aspect of the knee which is about 6″ in length and well healed. There are several other areas of scarring over the medial aspect of the knee and thickening of the knee. There is definite lateral instability, there is no medial instability. Extension of the knee is 180° flexion to 45°. There does not seem to be any difficulty with the power of the foot. There is good quadraceps power of the knee. He is able to extend the knee completely and hold it in the air. The patient is able to walk without the use of a crutch or cane. He holds leg in hyperextension and foot in plantar flexion." Also, for purposes of compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., the claimant's injuries were established as causing 50% loss of use of the left leg.[4]

At the hearing, which consisted principally of questions directed to the claimant by the referee, the claimant stated that he had worked as a stevedore for thirty-one years. His education is limited, the claimant testifying that he had completed two years of school.[5] The claimant testified that he was constantly in pain, also that "if I walk three or four squares, I have to lay down and rest." He stated that he could stand for only about fifteen minutes at a time and that he could not sit for any extended period either, because of cramps due to poor circulation.

■ Whereas Section 205(g) of the Act authorizes review of final decisions of the Secretary, it also limits the scope of review. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Thus the question for decision is whether there is substantial evidence in the record to support the decision of the Appeals Council that the claimant is not precluded from engaging in any substantial gainful activity. It is the duty of the court to look to the record as a whole. Boyd v. Folsom, 3 Cir., 1958, 257 F.2d

4. "The plaintiff is receiving $66.15 per month from the Veterans Administration for non-service connected total disability and compensation from his union of approximately $50.00 a month. Likewise, the injuries which were sustained by the plaintiff were found to be compensable under the Longshoremen's and Harbor Workers' Compensation Act, and the plaintiff received from the insurance carrier of his employer compensation under permanent partial disability for 73½ weeks from the date of his injury and 66 weeks of temporary total disability * * * This was all repaid by the plaintiff upon his having secured a judgment against the ship-owner for the injuries sustained by him, said judgment being in the sum of $70,000.00. After repayment of the above monies to the insurance carrier and legal expenses, there remained approximately $35,000.00 for the plaintiff." The claimant's brief, pp. 7–8.

Counsel for both parties referred to the matter contained in the foregoing paragraph. I deem it to be irrelevant to the issue presented for decision.

5. As the Appeals Council decision points out, the claimant in his application of April 23, 1955, stated he had completed six years of school.

778, at page 781, citing Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.

The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity.

As to the extent of the physical impairment, the Appeals Council decision is supported by much evidence and there is really no substantial issue of fact presented as to the nature and extent of the claimant's disability. While it is true that the Appeals Council did not make detailed findings of exactly what were the medical causes of the claimant's disability: *e. g.*, traumatic arthritis or a lowering of the left posterior crest of the plaintiff's pelvis, it did state the condition of the claimant symptomatically. For instance, the Appeals Council said, *inter alia,* "Medical examination on May 18, 1956 shows that he had some shortening of the left leg with limitation at the left knee joint and some low back spasm secondary to walking with a shortened leg." Describing the condition of the claimant in these terms is certainly sufficient for purposes of the Act, *viz.*, for subsequent determination of ability to engage in "any substantial gainful activity."

A more serious complaint involves omission of a finding by the Appeals Council of the claimant's alleged difficulty in sitting for any sustained period. However, the claimant's own witness, Dr. Gordon, stated that the claimant could work at a desk job. While this statement was later retracted by the Doctor, it was withdrawn on the basis of the claimant's lack of education. The inference remains, on which the Appeals Council could reasonably rely, that as a physical fact the claimant could sit for a sustained period of time. The claimant's brief emphasizes the testimony of the claimant as to pain. However, as to the back pains, Dr. Gordon stated no more than that there was "moderate tenderness over the lumbo-sacral area" and "some spasm of the erector-spinal muscles". This the Appeals Council found. As to the postoperative pain stressed by the claimant's brief, this is hardly a medical impairment of long-continued and indefinite duration. There was substantial evidence from which the Appeals Council could base its findings as to the extent of the impairment.

The Appeals Council did not find or reject as a fact that the claimant continuously suffered and is suffering pain in his left leg and knee as a residual condition following the injury and operations. However, the claimant has continuously complained of pain and there is no reason to doubt that he did and still does suffer severe discomfort.

The next question is more difficult to answer. The Secretary lays stress on the adjective "any" which precedes the phrase "substantial gainful activity" and cites to the court legislative history in support of his position.[6] However, the definition of disability cannot be considered *in vacuo.* The definition relates to the individual claimant. "[T]he act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has." Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 44, 48.

6. "D. Definition of disability. Only those individuals who are totally disabled by illness, injury, or other physical or mental impairment which can be expected to be of long-continued and indefinite duration may qualify for the freeze. The impairment must be medically determinable and preclude the individual from performing any substantial gainful work * * * Standards for evaluating the severity of disabling conditions will be worked out in consultation with the State agencies. They will reflect the requirement that the individual be disabled not only for his usual work but also for any type of substantial gainful activity." Senate Rep.No.1987, IX D., July 27, 1954, S3d Cong., 2d Sess.

The Appeals Council itself states that "it seems clear that the claimant because of his stiff leg could not return to his stevedoring work or ordinary manual labor or work involving a great deal of walking or stooping." It may then be inquired: What other work is available for this claimant? The Appeals Council was not specific here, but merely adjudged that his condition did not preclude the claimant from engaging in any substantial gainful activity. It is obvious that with his limited education, be it two or six years, the claimant is ill-suited for any clerical job. His earning power is limited by his strength and physical fitness. Thirty-one years as a stevedore is hardly qualification for any task which requires skilled manual dexterity or the use of figures or letters. According to the claimant's uncontroverted testimony, he is not able even to stand still for any long period of time. Of course, it may be conceded that with the use of great imagination and even greater ingenuity, conceivably a paying job might be found for Klimaszewski. The court, however, can presently perceive none and the Social Security Administration has not suggested any work for Klimaszewski except as a night watchman, or as stated in the Administration's brief, "bench work" or some other "employment in a light manufacturing plant."

Except for employment as a night watchman, which we think is not reasonably available in view of the claimant's limited ability to get about,[7] the suggested lines of employment are cast in general terms. There is no demonstration by way of evidence or argument that this claimant is qualified for any specific employment. The claimant's proof that he is not qualified to engage in any substantial gainful activity is not adequately countered by the Administration's suggestions of possible employment.

7. It is a fact, of course, that old employees with decrepitude are employed as night watchmen but usually by a former employer who desires to reward long service. The record is devoid of any sug-

 The word "any" must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment.

On the entire record the court concludes the denial of disability benefits to the claimant was erroneous.

The motion of the claimant will be granted and summary judgment will be entered for him. The motion of the Secretary for summary judgment will be denied.

An appropriate order may be submitted.

gestion that Klimaszewski's former employer, a stevedoring company, has offered him a night watchman's job or any similar suitable employment.