**Jess CLIFTON, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 6854.**

United States District Court
D. Colorado.

June 28, 1961.

George J. Duckworth, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., and Donald L. Giacomini, Asst. U. S. Atty., Denver, Colo., for defendant.

ARRAJ, Chief Judge.

This matter comes before the Court on cross motions by the plaintiff and defendant for summary judgment. There is no controversy as to the basic facts of the case; the only disagreement relates to the conclusions which should be drawn therefrom. Hence, this is a proper matter to be determined on requests for summary judgment.

The plaintiff filed applications to establish a period of disability under section 216(i) of the Social Security Act (42 U.S.C.A. § 416(i)) and for disability benefits under section 223 of the Act (42 U.S.C.A. § 423) on June 17, 1958. These applications were denied initially on September 26, 1958, by the Bureau of Old Age and Survivors Insurance. The plaintiff then requested reconsideration and on April 4, 1959, the Bureau, after the Colorado State Board for Vocational Education upon reevaluation of the evidence by a counselor and a medical consultant had found that the plaintiff was not under a disability, again denied plaintiff's applications. Plaintiff thereafter requested a hearing which was held before a hearing examiner at Denver, Colorado, on January 19, 1960. After taking testimony from plaintiff and his wife, the examiner decided that plaintiff was not entitled to the establishment of a period of disability or disability insurance benefits. The plaintiff requested review by the Appeals Council. The latter, after considering additional evidence consisting of letters from two doctors relating to plaintiff's capacity for performing gainful employment and the extent of his disability, denied the request for review. The decision of the hearing examiner thus became the final administrative action on plaintiff's claim.

At the time plaintiff filed his claim he was 50 years old. His education had ended with the eighth grade. His employment prior to entering the Air Force in 1942 had consisted of farming, ranching, construction work, manual labor for the Public Service Co. of Colorado and pinsetting. While in the Air Force, plaintiff worked as a warehouse supervisor, did various types of manual labor and was working as manager of the commissary store at the time that the nodule on his prostate was discovered. Shortly thereafter a radical, perineal prostatectomy was performed. As a result of this operation plaintiff experienced paralysis of the internal sphincter of the bladder due to operative trauma with total urinary incontinence. On April 20, 1958, it was discovered that plaintiff had a ureteral cutaneous fistula in the perinium. A suprapubic cystostomy was performed to correct that situation. On December 11, 1958, plaintiff was again examined and a report of that examination indicated that he would need to continue the use of an ambulatory urinal. The report also showed that plaintiff was suffering from excoriation of the thighs and hips caused by the harness for the urinal.

Plaintiff underwent additional surgery in September of 1959, the purpose of which was to attempt to control the urinary incontinence. On discharge the condition was considered improved, however, at the hearing held in January of 1960, plaintiff testified that it was still necessary for him to wear a urinal. A further operative procedure for attempted correction of urinary incontinence was had in April 1960, but apparently without beneficial results. Following the hearing, but before the Appeals Council

had considered plaintiff's request for review, additional evidence was submitted by him consisting of two letters from doctors who had treated plaintiff and were well acquainted with his condition. One was from a Dr. McGee, a civilian doctor who had worked at Fitzsimons Hospital where plaintiff had been treated and had followed his case from the first operation in January of 1958. This letter, dated May 4, 1960, contained the following statement, "I have followed this patient while in the hospital and feel that he should have permanent disability. I feel that he is unable to do any kind of work and therefore should not make any attempt to do so."

The other letter, dated April 29, 1960, is signed by Anthony A. Borski, Major, M. C., Chief, Urology Service, Fitzsimons General Hospital. In this letter, Dr. Borski states that "It is the opinion of the undersigned that this patient is totally and completely disabled due to the continuous problem of urinary incontinence which keeps him in constant discomfort with his wired mechanical appliances and pads to catch the urine. Furthermore, personally this is an incapacitating problem with this patient and I do not feel that he is in any physical condition to carry on any type of physical activity away from his home where he can manage his condition suitably." The plaintiff was discharged from the Air Force with 100 percent medical retirement.

The right to judicial review of a final determination of the Secretary is set out in 42 U.S.C.A. § 405(g): "* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *".

The term "disability" is defined by both sections 216 and 223 of the act in the same manner: "* * * the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, * * * *". 42 U.S.C.A. § 416(i) (1) (A).

The hearing examiner found that in view of plaintiff's background, education and experience he is capable of doing a light or sedentary type of work. It should be noted that the letters of Doctors McGee and Borski were not before him; however, those letters are now a part of the record in this proceeding.

There are numerous cases interpreting the sections of the Social Security Act in question. From these cases it would appear that the Secretary very often imposes a stricter test than that contemplated by the Act. Two cases that have placed a fair and reasonable interpretation on the Act are Klimaszewski v. Flemming, D.C.E.D.Pa.1959, 176 F. Supp. 927 and Sebby v. Flemming, D.C. W.D.Ark.1960, 183 F.Supp. 450. In the former case it was stated by the court that "The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity." 176 F. Supp. at page 931. In stating what it believes to be the proper interpretation of the phraseology of the Act the court goes on to say,

"The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment." At page 932.

Additional enlightenment as to the meaning of the terms found in the Act

may be gained by a consideration of the Sebbey case. There the court stated at page 455,

> "It should also be noted that the word 'substantial' as used in Secs. 416 and 423 does not modify 'gainful' but rather modifies 'activity'. The activity in which the plaintiff must be able to engage must not only be 'gainful' but it must also be 'substantial'. The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage."

Plaintiff must carry the burden of proof in showing that a disability exists as defined by the Act. However, there is a limit to the amount of proof the plaintiff must submit to carry that burden. In Corn v. Flemming, D.C.S.D. Fla.1960, 184 F.Supp. 490, the plaintiff, who suffered from spinal arthritis, had worked primarily as a manual laborer. Twelve doctors submitted reports. Two of the reports indicated that the plaintiff was capable of performing some light work. The Referee relied on these reports in making a decision which was adverse to the plaintiff. The court stated its views regarding the amount of evidence which plaintiff must offer to carry the burden of proof on pages 493 and 494,

> "The reliance of the Referee upon isolated remarks in two or three of the many reports before him is not enough to meet the test. * * * proof of inability of a claimant to further engage in his usual or lifelong occupation was sufficient to carry this burden of proof in the absence of some *definite* evidence as to other work which he could perform. * * * Mere abstract speculation by the Referee or [the] Appeals Council as to a possible avenue of employment for a claimant is not 'evidence' which a claimant should be required to refute; if it were, disability would be a meaningless word." (Emphasis by the court).

In the instant case there were five medical reports before the hearing examiner. In none of them was it stated that plaintiff was capable of performing any sort of gainful employment, substantial or otherwise. There were two letters, both dated subsequent to the hearing, from doctors who had treated plaintiff before the Appeals Council which stated that plaintiff was incapable of doing any work whatsoever and that he was totally disabled. Apparently, the hearing examiner based his decision on his observation of the plaintiff at the hearing and upon plaintiff's testimony to the effect that he could drive a car and that he had gone fishing on occasion. As to the weight to be given medical testimony by an expert the case of Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731, seems to be in point; there the Court said:

> "The medical opinion of the head of the Department of Orthopedics at the University of Nebraska that 'in my opinion she is totally disabled' was in nowise contradicted, either by other * * * testimony, opinion or fact. The opinion of an expert witness is, of course, advisory, but as was stated in Hill v. Flemming, D.C.Pa.1958, 169 F.Supp. 240, 245, where the court was faced with a similar problem:
>
> "'Expert opinions on such issues are admissible evidence to be considered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary an adverse decision on these ultimate facts should be set aside as based on "suspicion" and "speculation".'" At page 736.

A recent Seventh Circuit case enunciating the rule regarding the weight to be given expert medical testimony in this type of case is Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871. In this case the court stated at page 874,

> "The expert opinion of Dr. Morris as to disability and inability to engage in any substantial gainful employment, was admissible evidence for consideration by the referee and

not, in itself, binding on him. But as it was not controverted by substantial evidence to the contrary, the referee's adverse decision on the ultimate fact was properly set aside."

See also Pruitt v. Flemming, D.C.S.D. W.Va.1960, 182 F.Supp. 159.

██ From the above-cited cases it may be seen that where, as in the instant case, there is uncontroverted medical testimony to the effect that the applicant is unable to engage in any substantial gainful activity, then it is the duty of the Secretary to award him the relief requested assuming that, as is admitted in this case, all other qualifications are met. As was stated in Corn v. Flemming, supra, plaintiff has carried the burden of proof if he has shown inability to engage in his usual or lifelong occupation. This was done in the principal case. The Secretary offered no evidence of any other work that plaintiff might be able to do. The hearing examiner concluded that plaintiff was capable of performing some light or sedentary type of work, but this is nothing more than a generalization, mere speculation on the part of the examiner. In addition, the examiner did not have the letters of Doctors McGee and Borski before him, but the Appeals Council did. On the basis of that testimony they should have reversed the decision of the examiner, but they denied plaintiff's request for review. Thus, the decision of the examiner became the Secretary's final determination. In the light of all the evidence in this case, and especially the letters of Doctors McGee and Borski, this court is of the opinion that the examiner's decision is clearly erroneous and is not based on substantial evidence. Therefore, it should be reversed and remanded with instructions to grant plaintiff's request for the determination of a period of disability under section 216(i) of the Social Security Act (42 U.S.C.A. § 416(i)) and for insurance benefits under section 223 of the Act (42 U.S.C.A. § 423), the latter to be computed and payment of same authorized by the Secretary of Health, Education and Welfare. It is therefore,

Ordered that the plaintiff's motion for summary judgment be and the same is hereby granted. It is further,

Ordered that the defendant's motion for summary judgment be and the same is hereby denied.

Plaintiff will submit an appropriate Order.