**Andrew MODLA, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 8901.**

United States District Court
M. D. Pennsylvania.
March 11, 1966.

plaintiff, Andrew Modla, under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary that plaintiff is not entitled to disability insurance benefits and establishment of a period of disability by reason of a disability as defined in 42 U.S.C. §§ 416(i) and 423.

The pleadings reveal that plaintiff filed an application for disability insurance benefits on January 18, 1963, which was denied by the Social Security Administration and the claimant filed a timely request for a hearing on May 13, 1964. The hearing was held on September 29, 1964, before a Hearing Examiner who, in a decision dated October 9, 1964, also denied plaintiff's claim for disability benefits. Plaintiff filed a request for review, but this was denied by the Appeals Council and this denial became the final Administrative decision on the claim and constitutes the decision of the Secretary. Plaintiff then filed his complaint in this Court, seeking a reversal of the decision, and the defendant has moved for summary judgment. This motion is now before the Court for disposition.

Plaintiff was born November 14, 1906, and began working in the anthracite mines at the age of thirteen and remained so employed until 1941, when he was advised by his physician to discontinue working around the mines, presumably because of his lung condition. On May 28, 1942, he was rejected for military service, having been found to be physically disqualified by reason of advanced anthracosis. From 1942 until 1950 he worked in the Luzerne County Court House in Wilkes-Barre as a janitor, and in 1953 he was employed for part of the year as a Court House mailman, sorting and distributing mail. He then lost his job because of a change in the political administration. The plaintiff did not work again until May of 1960, when he went to work in a shirt factory, placing shirts in a bin, until he was laid off. From August 21 to August 27, plaintiff worked as a watchman to get an addition-

Bernard J. Kotulak, Anthony J. Lupas, Jr., Wilkes-Barre, Pa., for plaintiff.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant.

NEALON, District Judge.

This is a motion by the Secretary of Health, Education and Welfare for summary judgment in an action brought by

al quarter of coverage under the Social Security Act. Plaintiff's education is limited to the completion of the seventh grade of elementary school. He contends that he is unable to work due to anthracosilicosis and the effects thereof, and that his physical condition has prevented him from performing any substantial gainful activity.

▌ The Statute requires that the claimant prove he has a disability, i. e., that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. 42 U.S.C.A. § 423(c) (2). The Act is remedial and is to be construed liberally. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive· if they are supported by substantial evidence. Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956); 42 U.S.C. § 405 (g). Substantial evidence has been defined as that which is more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict, when the conclusion sought to be drawn from it is one of fact for the jury. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); National Labor Relations Board v. Columbian Enameling & Stamping Company, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939); Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The determination of substantial evidence is to be made on a case-to-case basis. Celebrezze v. Wifstad, 314 F.2d 208 (8th Cir. 1963).

▌ A two-part test has been established to determine the existence of the required disability: (1) what is the extent, if any, of the claimant's physical or mental impairment, and (2) does the impairment result in his inability to engage in any substantial gainful activity? Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa.1959).

Plaintiff's principal complaint is anthracosilicosis, a progressive disease. At the hearing [1] he stated that he can only walk 150 to 200 feet on the level without having to rest (N.T. p. 61); that he's consistently short of breath; that his heart starts to pound (N.T. p. 62); that he gets leg cramps and can't sleep for more than two and one-half to three hours at a time (N.T. p. 67), and that it takes up to one hour for him to clear the mucous from his lungs in the morning (N.T. p. 60).

The following medical reports were received into evidence:

(a) Exhibit B–50, the report of Dr. S. Wartella, a Radiologist at the Wilkes-Barre General Hospital, stated that claimant suffered third stage anthracosilicosis with pulmonary fibrosis and emphysema.

(b) Dr. Robert M. Kerr, a specialist in Internal Medicine, diagnosed plaintiff's condition as anthracosilicosis, stage three, with mild to moderate pulmonary emphysema. He stated: "This 56 year old ex-miner is partially disabled by his pulmonary emphysema and also by his obesity * * * he could probably perform some type of light work with no real difficulty." (N.T. p. 224) He found claimant's vital capacity was 85% of normal and that his maximum breathing capacity was 78% of normal.

(c) Dr. Paul C. McAndrew, a specialist in pulmonary diseases, found that the plaintiff had a vital capacity of 76% of normal and a maximum breathing capacity of 29% of normal. In his conclusion he stated:

"It is apparent that this patient has impaired pulmonary function

---

1. The plaintiff was not represented by counsel at the hearing.

with a cardiovascular component * * * these findings are indicative of anthracosilicosis with superimposed emphysema, accompanied by essential hypertension. Physical activities are obviously restricted because of the age and the above recorded signs. Mental activities are curtailed by a third grade education. Improvement can hardly be expected from either." (N.T. pp. 231, 232)

(d) Dr. E. C. Beckley, claimant's personal physician, concluded that plaintiff's physical condition results in shortness of breath on exertion and that he has third stage anthracosilicosis. Dr. Beckley stated that exertion results in dyspnea and that emphysema is present at the base of both lungs. It is his opinion that the claimant is totally disabled.

(e) Dr. Thaddeus A. Salaczynski, a general practitioner, provided a diagnosis of advanced anthracosilicosis with emphysema. He specified that moderate exertion results in dyspnea and that there is moderate emphysema in the bases of both of claimant's lungs. He found that claimant has a vital capacity of 50.2% of normal and a maximum breathing capacity of 58% of normal. Dr. Salacynski concluded:

"This man is adjudged totally disabled and unfit for any future work." (N.T. p. 236)

(f) Dr. Edward P. Swartz, a specialist in Internal Medicine, reported that "there is no dyspnea nor cyanosis. This man has an adequate pulmonary reserve." (N.T. p. 228) For some unknown reason, Dr. Swartz made no finding as to the existence of anthracosilicosis and the stage it had reached.

■ As we have come to expect in these cases involving anthracosilicosis victims, the Examiner accepted the testimony downgrading and minimizing plaintiff's complaints and rejected the evidence which indicated that plaintiff had a severe obstructive pulmonary insufficiency. According to the Examiner, Dr. Salaczynski's findings were " * * * overcome to the satisfaction of the Hearing Examiner by the laboratory findings of Doctors Kerr, Berley, Swartz and McAndrew." The findings of Dr. Berley and Dr. Kerr of "early moderately severe obstructive pulmonary insufficiency" were accepted by the Examiner, who also concluded that "Dr. McAndrew's pulmonary function studies with the exception of the maximum breathing capacity are sufficiently normal to corroborate the findings of the other impartial consultants." However, this one inconsistency was eradicated, as follows: "(T)he Hearing Examiner can only conclude that this markedly deficient maximum breathing capacity of 29% was a controlled reaction to the test as administered by Dr. McAndrew and represents a determined effort by the claimant to establish his disability." Finally, the Examiner concludes, "(A)lthough the record does indicate that the claimant's physical capacity is somewhat restricted, the reports of physical examinations by the various physicians including the exercise tolerance test administered by Dr. McAndrew indicate that the claimant has a substantial physical reserve which is adaptable in combination with his age, experience, education and general ability to other types of substantial gainful activity." The Examiner's determination as to the extent of the impairment suffered by claimant survives the test of substantial evidence, although by a slim margin. Recognizing that Congress has placed the fact-finding power in the Secretary, and so limiting my authority, I conclude that there was substantial evidence to support the findings of the Secretary as to the extent of claimant's impairment. Nevertheless, it is clear that plaintiff has a serious physical impairment of anthracosilicosis, third stage,[2] which, at the very least, somewhat restricts his physical capacity.

---

2. In Bujnovsky v. Celebrezze, 343 F.2d 868 (3d Cir. 1965), wherein the Court recognized that plaintiff had a physical impairment, it consisted of second stage anthracosilicosis with moderate emphysema.

The next issue to be resolved is, "does the impairment result in his inability to engage in any substantial gainful activity?" Klimaszewski v. Flemming (supra). In answering this question, the Court in Hodgson v. Celebrezze, 312 F.2d 260 (3d Cir. 1963), posed the following criteria: "Not only must '[t]he capabilities of the individual * * * be viewed in context with his own physical, educational and vocational background', Sobel v. Flemming, 178 F. Supp. 891, 895 (E.D.Pa.1959), but also the following question must be asked and resolved: '[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.'" Moreover, the emphasis is directed not to the average man, but to the particular claimant's capabilities, Farley v. Celebrezze, 315 F.2d 704 (3d Cir. 1963), and his capabilities must be considered in relationship to the industrial complex in which he finds himself. Ellerman v. Flemming, 188 F.Supp. 521 (W.D.Mo.1960).

The record is replete with testimony by the plaintiff that he has exerted every conceivable effort to obtain employment. To buttress this testimony, plaintiff offered into evidence a letter from Mr. Peter Calinski, Manager of the Pennsylvania Bureau of Employment Security Office in Nanticoke, Pennsylvania, claimant's home town. This letter states:

"Mr. Modla has continuously sought employment through this service since September, 1961 but due to his disability has been unsuccessful.

"This community unfortunately has many victims of anthracosis. Many of them are just as unfortunate as he in limited education and work experience. Academic shortcoming coupled with age preclude possibilities of training for any substantial employment as evidenced by absence of any attention by the Bureau of Rehabilitation to whom he was long ago referred.

"Across the years our agency has been unable to obtain openings in suitable employment to which he could be referred although he has diligently sought such opportunities.

"It is true that he has been successful at obtaining employment after leaving mine work but a careful examination of his work history will indicate that the greatest period of such employment was in positions where influence or consideration, perhaps political, created duties extremely light and devoid of responsibility.

"Although our efforts to obtain suitable employment for Mr. Modla will continue unabated, we must admit that possibilities for his successful placement are not to be reasonably anticipated."

Once the claimant has produced evidence of a serious impairment, his work experience, his incapacity to perform that kind of work any longer, his lack of particular experience for any other type of job, and his inability to obtain other employment, then it is the defendant's burden to adduce some evidence from which a finding can be made that a reasonable employment opportunity is available to him. Bujnovsky v. Celebrezze, 343 F.2d 868 (3d Cir. 1965); Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963); Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964). The only testimony contradicting plaintiff's evidence and sustaining the defendant's burden as aforesaid, was that of Dr. Samuel Granick, a vocational consultant, who appeared and testified at government expense. Dr. Granick, after reviewing the previous record of the case and the medical reports, prepared a list of jobs which, in his opinion, might be available to the claimant. This list was prepared prior to the hearing and before the witness had an opportunity to interview the claimant.

Dr. Granick based his testimony on various reference works.[3] His statements concerning the claimant's abilities were based upon the exhibits of record, the testimony at the hearing and his expertise as a vocational counselor and consultant. Dr. Granick prepared Exhibit B–68 and introduced it as part of his testimony. The exhibit shows that he concluded the claimant was best suited for work of a sedentary nature, i. e., a job which is performed in a sitting position,[4] and that the work be light work, requiring a small expenditure of energy. He submitted a selected list of jobs which plaintiff, in his opinion, could perform, e. g., Egg Candler, Glass Shader, Glove Pairer, Puller, Sample Mounter, Flashlight Assembler, Band Trimmer, Box Tier and Carton Inspector. It was his conclusion that the plaintiff had sufficient ability and residual capacity to perform these types of jobs requiring little physical effort and he stated that these jobs might be available to him in a variety of industries. He testified that there are such jobs in the vicinity, i. e., in the Wilkes-Barre/Hazleton area, although he made no independent survey to ascertain the availability of such jobs to the plaintiff outside of reference to the periodicals. Dr. Granick made no attempt to reconcile his nebulous conclusions with the realistic factual report submitted by Mr. Calinski, the Manager of the local office for the Bureau of Employment Security, even when the plaintiff inarticulately attempt-

ed to have him do so.[5] Moreover, the Hearing Examiner made absolutely no effort to explain the conflict either in developing the record or in his evaluation of the testimony. Notwithstanding this, the Examiner found Dr. Granick's testimony that the plaintiff had the present capacity for engaging in many jobs existing in the American economy and particularly in the Wilkes-Barre/Hazleton area to be "compelling." In doing so, he ignored the ruling of the Court of Appeals for this Circuit in Stancavage v. Celebrezze, 323 F.2d 373 (3d Cir. 1963), where the Court rejected governmental and industrial studies as not moving far enough away from the realm of conjecture and theory and added:

> "There must be something more tangible establishing what employment opportunities there are for a man with his impairment. The failure of the Secretary to establish the existence of that kind of genuine employment opportunity is patent."

In Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964), it was held that the Secretary should have found for the claimant in accordance with the evidence indicating his inability to find work, or to show an adequate basis for concluding that he could have obtained light work by the exercise of reasonable diligence on his part. The speculative expressions by Dr. Granick, especially in the face of Mr. Calinski's

---

3. These were: (1) The Dictionary of Occupational Titles, a standardized reference book for job descriptions throughout the country; (2) additional volumes which either supplement the above dictionary, list all occupations by number so they can be located if only the number or the general area where the job exists is known, or show an entry occupational classification; (3) the United States Census Report, which describes what kind of jobs are available in different parts of each State, specifically in the State of Pennsylvania, which is broken down into the area around Wilkes-Barre, Scranton, and Hazleton; (4) the Directory of Manufacturers in Wilkes-Barre and Hazleton, which is published by the Greater Wilkes-Barre Chamber of

Commerce. It lists the various companies and industries which exist in this particular vicinity.

4. In this regard, Dr. Granick, the vocational expert, noted that claimant " * * * can sit up in a chair and he can do some standing and walking." (N.T. p. 84)

5. "Claimant: I don't want to be smart or anything because I want information. If these corporations hire, well then the man down the unemployed office never recommended me to none of these companies.

Dr. Granick: Well, why he never recommended you, I don't know, other than perhaps they don't have a position available now." (N.T. p. 90)

actual experience, do not provide an adequate basis for such a conclusion. Merely citing catalogues which list capsule descriptions of thousands of jobs available to prospective employees is not sufficient. Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964); Thomas v. Celebrezze, 331 F. 2d 541 (4th Cir. 1964); Stancavage v. Celebrezze (supra). Where the question of whether or not applicant is entitled to disability benefits is a close one, the doubt should be liberally construed in favor of the claimant. Dean v. Flemming, 180 F.Supp. 553 (E.D.Ky. 1959); Celebrezze v. Bolas (supra). Dr. Granick's testimony falls far short of showing the genuine employment opportunities available to plaintiff and does not meet the legal standard of substantial evidence. See Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965); Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Frazier v. Celebrezze, 236 F.Supp. 938 (E.D.S.C. 1965); Goodwin v. Celebrezze, 239 F. Supp. 487 (W.D.La. 1965), and Hamlet v. Celebrezze, 238 F.Supp. 676 (E.D.S.C. 1965). Moreover, it must be presumed that the best available proof on this has been presented. Stancavage v. Celebrezze (supra).

It has become quite obvious that Hearing Examiners are applying a strict, legalistic construction to anthracosilicosis cases, quite contrary to the liberal construction directive issued by the Courts. I have complained in previous opinions about their unwillingness to recognize and respect the rulings and criteria set down in this Circuit in Hodgson, Farley, Stancavage, Janek and Bujnovsky (all supra). The combination of strict construction and failure to follow judicial precedent has resulted in an increasing number of appeals by claimants in this District. That these appeals were proper and legally correct is evidenced by the fact that Chief Judge Sheridan and I have reversed the Secretary in thirty of thirty-two cases over the past three years. It would appear that the time has come for the Hearing Examiners to heed the directions and guidelines of the Court of Appeals of this Circuit so that our dockets will not become overburdened with unnecessary appeals from decisions of the Secretary.

The defendant's motion for summary judgment will be denied; the decision of the Secretary will be reversed, and judgment will be entered for the plaintiff.