Jack R. THOMAS, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.

No. 72 Civ. 3141.

United States District Court,
S. D. New York.

March 4, 1974.

Walter & Tepper, Brooklyn, N. Y., for plaintiff.

Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, Samuel J. Wilson, Asst. U. S. Atty., for defendant.

## MEMORANDUM

LASKER, District Judge.

This is an action under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) for review of a final decision of the Secretary of Health, Education and Welfare (the Secretary), denying plaintiff's claim for continuation of disability benefits and a "disability freeze." The purpose of a disability freeze is to eliminate from the wage earner's record his period of disablement, increasing the average monthly wage for purposes of computing his old-age benefits. Plaintiff was initially allowed benefits beginning in March, 1967. After a determination by the Social Security Administration that plaintiff's disability had ceased in March, 1971, and a like finding by the hearing examiner on May 10, 1972, benefits were terminated. The hearing examiner's decision became the final decision of the Secretary after approval by the Appeals Council on June 15, 1972.

Both plaintiff, Jack R. Thomas, and the Secretary move for judgment on the pleadings and transcript of the hearing record pursuant to Rule 12(c), Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), the government claiming that the decision of the hearing examiner is supported by substantial evidence, and plaintiff that it is not.

## I.

Section 223 of the Act, 42 U.S.C.A., § 423, provides in relevant part:

"For purposes of paragraph (1)(A) —an individual . . . shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country..

\* \* \* \* \* \*

For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."

The parties are essentially in agreement on the extent of plaintiff's impairment. On March 12, 1967, he fractured a vertebra of the spine in an automobile accident; upon healing, his condition stabilized with residual limitations on weight-bearing ability and bending, and intermittent moderate pain which prevents plaintiff from remaining too long in any one physical position. The parties part company, however, on the issue whether the evidence establishes that plaintiff's impairment has improved sufficiently to permit him to engage in "substantial gainful activity" within the meaning of the Act.

Plaintiff had been a crane operator prior to his injury, a job involving heavy manual labor. It is undisputed that his educational deficiencies which include limited reading, writing and verbal abilities, (Transcript 82) preclude all but manual occupations. In view of these deficiencies, the hearing examiner asked Fred M. Hoenigmann, the sole vocational expert who testified, the following:

"Q Mr. Hoenigmann, I ask you to consider the claimant's age of 49 years. He was born on March 8, 1922; his education, training and work experience, and assuming I find he's been suffering from a residual fracture of the 12th dorsal vertebra, as a consequence of which he has a somewhat limited range of motion, forward bending and backward bending (apparently sideway bending is adequate) and there's some restriction of motion in the cervical area, which after passage of time or continuation of the activity will create a certain amount of pain; as a consequence of which any work that he might be able to do should be limited to positions where he can sit or stand as he chooses; and with minimal bending, limited squatting, stooping, lifting; certainly nothing in excess of 15 to 20 pounds and of a more sedentary nature. Is there any work which exists in significant numbers in the general area of metropolitan New York which he has the residual capacity to perform?

A There would be a few jobs."

Hoenigmann described several jobs he thought plaintiff could do. However, on cross-examination, his opinion of plaintiff's actual fitness for such jobs, or the availability of such jobs in the labor market, was punctuated by reservations and qualifications. Some reconstruction of the colloquies gives the flavor of his testimony.

The first job, that of elevator operator, would offer Thomas the option of sitting or standing on the job (Transcript 84) and though the expert recognized the declining availability of such jobs because of automation (Transcript 84), he estimated that some 200 male el-

evator operators were employed in Westchester County (within the region in which plaintiff resides) chiefly by government agencies. He was, however, uncertain about employers' policies on medical examinations, and stated that Thomas would be unable to perform the job if it involved opening and closing elevator doors manually (Transcript 91).

Other jobs, such as a taxi driver, chauffeur, and parking lot attendant are evidently less difficult to come by, but the expert testified to Thomas' limited fitness for them: jobs as a driver do not, of course, give one the option of sitting or standing (Transcript 90). Asked whether he would hire a man in Thomas' condition to transport the public on public highways, the expert testified: "Well, I might . . . it would have to be a highly individualized situation, but I've heard of such cases." (Transcript 90–91.) It was established that a job of parking lot attendant would also be difficult for Thomas to perform since he would have to "move fairly fast" (Transcript 92), unless the job were outside New York City (Transcript 93) where the pace of life—and automobile driving—would be more leisurely (Transcript 92). The expert testified there were 104 such jobs in Westchester County, and, as he phrased it, Thomas might get one if he were "very lucky" (Transcript 93); his chances, in view of his impairment, would be "very limited" (Transcript 94).

Thomas' possible employment as a fork lift driver, was seen by the expert as restricted because of vibrations and jolting movements from the truck (Transcript 94). There was no testimony on the availability of such jobs.

The next possibility, work as an assembler of small products, was in the opinion of the expert very limited, since in most cases plaintiff would not be able to sit or stand as he chose (Transcript 95), and might not be able to keep pace with an assembly line (Transcript 95). The expert stated that there are not many factory jobs meeting Thomas' requirements, "but there are some that do

exist". (Transcript 96.) No figures were supplied as to their availability.

A job selling lawn and garden supplies (Thomas has had experience on a farm) appeared quite unfeasible since it involves lifting heavy supplies, such as fertilizer bags, into customers' cars and long periods of standing (Transcript 87–88). The expert testified that an employer would have to make "special provisions" for Thomas, and stated "a small percentage" of them might be willing to do so (Transcript 89). No figures were supplied on this point.

The final possibility, a job as guard, watchman or doorman, seems to be available in large numbers in the metropolitan area (Transcript 85). There was no testimony as to the number of jobs in this general category which would permit Thomas to sit or stand as he chooses.

■■ We conclude that the testimony of the vocational expert—the only evidence on the issue before us—is not evidence of sufficient substance to support the Secretary's finding that Thomas can engage in "substantial gainful work" within the meaning of the Act (as quoted above). It is settled that a "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960); Celebrezze v. Bolas, 316 F.2d 498, 501 (8th Cir. 1963). The test is what is "reasonably possible, not what is conceivable," Klimaszewski v. Flemming, 176 F.Supp. 927, 932 (E.D.Pa.1959), in view of the fact that the Act is remedial and is to be construed liberally, Kohrs v. Flemming, 272 F.2d 731, 736 (8th Cir. 1959); Celebrezze v. Bolas, supra.

On the basis of the record before us, the plaintiff is fitted only for manual labor, and is largely precluded even from that as a result of his disability. The suggestions of the vocational expert as to possible employment were consistently equivocal, and, in our view, too slender a reed on which to base the Secretary's finding. As the court remarked on Kli-

*maszewski, supra* (176 F.Supp. at 932), "it was not the intention of Congress . . . to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

Though we find that the Secretary's determination is not supported by substantial evidence, we cannot say with confidence, in the present state of the record, that Thomas is in fact unable to engage in gainful employment. For example, the Secretary may be able to show the existence in sufficient numbers of suitable jobs as a watchman, or other work. Therefore, the proper course is to remand this case to the Secretary for further findings in accordance with this Memorandum.

Defendant's motion for judgment on the pleadings is denied; plaintiff's motion is granted unless within sixty days the Secretary establishes after a further hearing the existence of "substantial gainful work" which plaintiff can perform within the meaning of the Act.

It is so ordered.