Charlie P. DUNN, Plaintiff,

v.

Marion B. FOLSOM, Secretary, Department of Health, Education and Welfare, Social Security Administration, United States of America, Defendant.

No. 755.

United States District Court
W. D. Arkansas,
Hot Springs Division.
Oct. 10, 1958.

.Phillips & Wright, Hot Springs, Ark., for plaintiff.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

Plaintiff brought this action under Title 42 U.S.C.A. Sec. 405(g), to review an adverse final decision of the Secretary of Health, Education and Welfare, under the Social Security Act. By proper procedures the plaintiff sought an administrative determination that he was entitled to a "period of disability" and disability benefits under the Social Security Act, Title 42 U.S.C.A. Secs. 416 and 423. The Referee denied the relief sought. The plaintiff exhausted his administrative remedies, and the Referee's decision became the final decision of the Secretary.

This action to review that decision was filed on July 1, 1958, and on August 25, 1958, defendant filed his answer together with a certified copy of the transcript of the administrative record, including the evidence presented to the Referee and the Referee's written decision.

■ Jurisdiction of this court is conferred by Title 42, U.S.C.A. Sec. 405(g), which also provides that any administrative findings of fact are conclusive if supported by substantial evidence. The factual inferences and conclusions of the Referee are likewise binding if so supported, but the Referee's conclusions or interpretations of applicable law, while perhaps persuasive, are not in any way binding on review by this court. For a more complete exposition of these rules see Bostick v. Folsom, D.C.W.D.Ark.1957, 157 F.Supp. 108; Fuller v. Folsom, D.C. W.D.Ark.1957, 155 F.Supp. 348.

■ The plaintiff sought to establish a "period of disability" under Title 42 U.S.C.A. Sec. 416(i), in order to "freeze" his insured status under the Social Security Act, and also sought to obtain disability benefits under Title 42 U.S. C.A. Sec. 423(c) (2). Both sections define "disability" in identical terms, except that in regard to conditions not relevant here Sec. 416 is somewhat more liberal. "Disability" is defined as meaning:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

If the plaintiff was "disabled" as defined by the act, he was otherwise qualified for disability benefits and for the establishment of a "period of disability", but the burden of proving disability was upon the plaintiff. Bostick v. Folsom, supra; Fuller v. Folsom, supra.

■ The Referee, who heard the matter on January 7, 1958, and who also received into evidence subsequent medical reports, concluded that no disability existed, and in any event that any disability was not of indefinite duration as required by the act. The Referee, in reviewing the evidence, stated:

"The claimant alleged in his application to establish a period of disability that he had become unable to engage in substantial work in December 1952, at age 54. His former employment was as a boiler fireman, he had a fourth grade elementary education. He further alleged that he had stopped work because of an ankle injury on December 12, 1952, was in a cast for about two weeks and then on advice of his doctor went back to work. The injured area became infected and pus formed in his ankle and afterwards the knee, from which condition he cannot stand or sit in any position very long. His only listed current activity was walking a little around the house. (TR.9)

* * * * * *

"The claimant testified before the referee that his employment from December 1952 to October 16, 1953, was intermittent and that at the time of his injury in December 1952, was employed as a boiler fireman at

which work he had been engaged for some nine years. The claimant further stated that this work had been consistent to the date of his injury in 1952. In specific reference to the injury the claimant stated he had broken his ankle on December 12, 1952, and that the injured member was in a cast for two weeks and four days and that when he tried to resume work he had rebroken his ankle which incident was about eight or nine weeks after the cast was removed. He described an operation in 1955 wherein an incision of some fourteen inches had been made to the front of his knee and an additional incision at the back of the knee which operation incurred some five weeks hospitalization. He further advised that Dr. R. V. Bennett had recommended an additional operation which would involve the use of a brace and that he would be unable to work; could just get around the house; and that the limb would be stiff. He also had been advised that the operation was for the purpose of stopping the pain which he had continuously at this time. He described present difficulties with his knee, ankle, and hip involving swelling, particularly in the ankle occasioned by walking, and that his present condition prevented him from doing anything other than just sitting around the house or reclining on his bed. He further stated that he can walk only some three to four city blocks but had been advised by his doctor to exercise, particularly in walking, to keep his joints from becoming stiff. The claimant stated that he took capsules for pain and that he has difficulty in sleeping and 'just worries himself to sleep at night.'

"The medical reports in the file at the time of the hearing in this case were by Dr. Thomas M. Durham, Jr. These reports, two in number, reflect a history of the injury referred to by the claimant and intermittent treatment by several physicians since that time and chronic synovitis and later post traumatic arthritis of the right subastragalar joint. Dr. Durham's findings consisted of a one-half inch enlargement of the right knee with definite intra-articular reaction and a large Baker's cyst posteriorly; moderate quadriceps atrophy, but good range of knee motion with minimal limitation due to swelling only. The doctor further stated that the right ankle is improving and shows no enlargement as compared with the left, but there is still approximately fifty percent restriction in subastragalar motion. There was x-ray evidence of post traumatic arthritis of the subastragalar joint with osteoarthritis changes, mild in degree in the right knee. A biopsy report of the right ankle revealed a nonspecific synovitis. The doctor, by comment, stated his conclusion that the claimant has been disabled under the present episode since February 1955, because of post traumatic arthritis of the right subastragalar joint and osteoarthritis of the right knee. The last report of this doctor dated March 12, 1957, reported additional findings of post traumatic arthritis of the right subastragalar joint with a chronic tenosynovitis of the posterior tibial tendon on the right confirmed by surgery. He also has a recurrent villonodular synovitis of the right knee which has recurred after synovectomy of the knee." (TR.9–10)

The Referee did not make any findings of fact as such, and his written decision is cast in the form of a review of the testimony and exhibits. While none of the testimony or exhibits are contradicted on any matter of fact and, therefore, must be accepted not only by the Referee but also by this court, the failure to make findings of fact rather than mere summaries of testimony would make a decision by a reviewing court impossible where any facts or inferences are in dispute.

The Referee concluded:

"In the letter accompanying the above referenced report Dr. Bennett stated that he had advised a primary compression arthrodesis of the knee. The stated object of this operation was to give the claimant a 'painless stable leg on which to work'. The present disability of the extremity was estimated by the doctor to be about eighty percent. It was his feeling that there would be approximately forty-five percent disability after the operation.

"From a careful review of the evidence in this case it is apparent that claimant's condition has not been such as to affect more than one extremity and such condition in the absence of an involvement of other physical impairments is not sufficient to constitute a disability of such severity as to qualify the claimant under his applications. While the claimant suffered reverses in the attempts of his doctors to effect a cure it appears that his condition was such that might be expected to respond to proper treatment and surgery. Claimant's condition, then, has not been, nor is it now, one of indefinite duration. The report of Dr. Bennett substantiates this finding. It is demonstrated that a substantial improvement in claimant's condition can be effected by an operation without danger to claimant's health and that claimant is willing to submit to the operation. While it cannot be said that claimant's condition is of such severity as to warrant a finding of disability under the Social Security Act even at this time, the fact that the proposed operation may be reasonably anticipated to give claimant 'a painless stable leg on which to work' and reduce the disability of his leg from approximately eighty percent to approxiately forty-five percent, fully confirms the determination made that the claimant is not entitled to a period of disability and disability insur- ance benefits under his applications." (TR.11–12)

Thus it will be seen that the conclusion of the Referee is based on two points: first, that "in the absence of an involvement of other physical impairments" the severity of the plaintiff's impairment was insufficient to establish his inability to engage in substantial gainful activity; and second, that in any event the operation proposed by Dr. Bennett and the expected results prevented the plaintiff's impairment from being of "indefinite duration" since the results anticipated would reduce disability to about forty-five percent.

Although the Referee referred in his written opinion to a lack of other physical impairments on the part of the plaintiff, the plaintiff's testimony establishes that he is partially deaf and is completely blind in one eye. He also testified that he cannot read or write and his education ended when he reached the fourth grade, and at that time learned the work of firing boilers. While the Referee did not make any "findings" at all and did not include these facts in his review of the testimony, the omission cannot be viewed as a finding that these matters were untrue. In any event, these statements are uncontradicted, and there is no substantial evidence, or any evidence at all, to cast any doubt on these statements.

As noted by the Referee, plaintiff has had three operations on his ankle and knee. As of the time of hearing before the Referee, some five years after his initial injury, those operations had failed to provide relief; the plaintiff testified that he seemed to be getting worse, and that he had not been able to work in $4\frac{1}{2}$ years. Dr. Bennett, whose report is quoted only in part by the Referee, concluded that a change of approach might be of value and that instead of another attempt to "excise the snymovium," recommended "a primary compression arthrodesis" and "perhaps a reverse Mauck procedure." He states:

"The amount of swelling and pain he has is concomitant with activity. * * * The knee occasionally locks,

and the locking is followed by swelling. For the past six months he has noticed a dull catching pain in the hip. (TR.57).

\* \* \* \* \* \*

"I asked this man to deliberately walk in attempt to make the knee joint swell. He returned in two days with an increase of 4 cms in circumference of the right knee joint as compared to the first examination." (TR.58)

As stated by the Referee, Dr. Bennett noted considerable atrophy in the quadriceps and a marked grating within the joint. Dr. Bennett concluded that the plaintiff was, as of February 12, 1958, approximately eighty percent disabled. This conclusion is confirmed by the similar opinion of Dr. Durham that "at the present time, he is unable to work."

There is no evidence whatever to suggest that, as of the time of the hearing, or at any date since October 16, 1953, the plaintiff was able to engage in any substantial activity. One physician testified that he was eighty percent disabled, and another that he was unable to work. Plaintiff himself so testified, and further testified that he could neither walk more than a few blocks nor sit in any position more than a few minutes.

The Referee's mixed finding of fact and conclusion of law that the severity of the impairment was insufficient to prevent the plaintiff from engaging in substantial gainful activity is not, under these undisputed facts, based upon any substantial evidence.

The Referee also concluded, however, that since the operation proposed by Dr. Bennett could be expected to reduce disability, the impairment would not be one of "indefinite duration" but would end following the operation. This conclusion was based upon the estimate by Dr. Bennett that the disability would be reduced to about forty-five percent and that the "object" of the operation would be to give the plaintiff a stable leg on which to work. Dr. Bennett, quite properly, did not attempt to appraise the plaintiff's ability to work after this operation or his qualifications for any work which his condition would permit.

■ The Social Security Act, Title 42 U.S.C.A. §§ 416(i) and 423(c) (2), requires that any disability claimed arise from "medically determinable physical or mental impairment," and that it prevent the claimant of such disability from engaging in "*any* substantial gainful activity." The fact that this plaintiff is illiterate and of severely limited training and experience would not itself be a physical impairment justifying a finding of disability. But the act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the act would be utterly futile if "any substantial gainful activity" means activity utterly beyond the capacity of the particular person involved. "Any substantial gainful activity" is such activity for which the particular claimant is reasonably qualified by education, training, or skill. Compare cases relating to "total disability" under War Risk and National Service Life Insurance. Berry v. United States, 1941, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945 and see Bostick v. Folsom, D.C.W.D.Ark. 1957, 157 F.Supp. 108, at page 118, and cases there cited. Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent of the impairment itself.

In this instance, the plaintiff's inability to read or write is significant. His experience has been at heavy and unskilled labor. He went to the fourth grade at which time he learned the job of firing boilers. He has lost one eye and states

that vision is very poor in the other. He is likewise hard of hearing. With these impairments he might be capable of holding a clerical job, but his qualifications do not leave that course open to him. The operation proposed by Dr. Bennett would fuse the joints, apparently rendering his knee stiff or locked. While this operation might give him a "painless leg" on which he could "stand" as Dr. Bennett hopes, it could hardly fit him for the arduous work for which his training and education qualify him, and it could not remove the arthritis and the difficulties in his ankle. In all probability, most persons today who found themselves in the plaintiff's condition would be able to engage in some substantial gainful activity, but the plaintiff could hardly be expected to return to firing boilers with one immovable leg; and that is the only type of work for which he is fit under the circumstances. His education and training are so limited that he cannot even be expected to train or adapt himself to any other type of work, at least not immediately. If he is able at some future time to rehabilitate himself, the Secretary can, of course, terminate his period of disability and his disability benefits.

■ It should also be noted that the word "substantial" as used in Secs. 416 and 423 does not modify "gainful", but rather modifies "activity." The activity in which the plaintiff must be able to engage must not only be "gainful" but it must also be "substantial." The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage. Measuring this requirement in terms of time and physical and mental effort, it is apparent that this plaintiff, even after the proposed operation, cannot be expected to engage in any substantial activity for which he is qualified, and his disability is therefore, so far as the record reflects, one of "indefinite duration," both as of the time of hearing and as of the time of injury.

Based upon this record of numerous physical impairments, together with the plaintiff's complete lack of training, education or skill, the court is convinced that the plaintiff sustained his burden of proving a disability and period of disability as defined in the act, and the Referee's conclusion to the contrary was not based upon substantial evidence or upon the governing law.

Therefore an order should be entered in accordance with this opinion denying the defendant's motion for summary judgment and reversing and remanding the case to the Secretary, Department of Health, Education and Welfare, with directions that the plaintiff be granted a period of disability from the date of his last work and such disability insurance benefits as he would have been entitled to had his initial application been approved.