Max FRISCHMAN, Plaintiff,

v.

Arthur FLEMING, Secretary of the United States Department of Health, Education and Welfare, Defendant.

Civ. No. 19352.

United States District Court
E. D. New York.

April 25, 1961.

Harold Tompkins, New York City, for plaintiff.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Philip Silverman, Asst. U. S. Atty., New York City, of counsel, for defendant.

RAYFIEL, District Judge.

These are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U. S.C.A.

The plaintiff commenced this action under Section 405(g) of Title 42 of the U.S.C.A. to review and reverse the decision of the Appeals Council of the Social Security Administration which had denied him disability benefits.

The facts, as disclosed by the transcript of the record on file, are as follows:

The plaintiff was born on March 21, 1895, had been employed as a machinist and electrician. In January, 1943, his employment as an electrician at the Navy Yard in Brooklyn, New York, was terminated by reason of the completion of the work in which he had been engaged. Thereafter he attempted to obtain work, but without success. For some time previously he had been suffering from a peptic ulcer and diabetes, but neither of these ailments had disabled him. In August, 1943, he consulted a physician, Dr. Wincor, because he was suffering from heartburn and substernal pain, with radiation. Dr. Wincor advised him not to work and to take naps between meals. Periodically thereafter, until October, 1944, he visited Dr. Wincor, who, in a statement dated November 13, 1956, said the plaintiff had been under his care during that period "for the treatment of precordial pains indicative of angina of (sic) effort." On August 30, 1944, having suffered

chest pains on the preceding day while walking on a golf course, he consulted one Dr. Douglas Palmer, now deceased, who administered a hypodermic injection and nitroglycerin orally and advised immediate and continued bed rest. On September 29, 1944, when he complained of illness and difficulty in breathing, his wife accompanied him on a visit to Dr. Wincor. The doctor directed him to return to bed. Early in the morning of October 2, 1944 he was taken to the emergency room of the Jewish Hospital of Brooklyn (the hospital record shows October 3, 1944 as the date of treatment), where his condition was diagnosed as "nicotine intoxication." After treatment he returned to his home. A few hours later his wife accompanied him to Dr. Palmer's office where he was given a sedative hypodermically and then sent to the French Hospital for treatment by a Dr. Harry Johnson, a heart specialist.

The record of the French Hospital, dated March 10, 1958, reveals that the plaintiff was first admitted to that institution on October 3, 1944. He remained there until November 6, 1944, when he was discharged. The abstract of the plaintiff's record at the French Hospital, dated November 30, 1950, states as follows: "Electrocardiograms taken on 10/5/44, 10/16/44 and 11/3/44 all showed changes consistent with myocardial disease.

"Patient's condition improved, discharged 11/6/44. Diagnosis on discharge was coronary thrombosis."

On December 18, 1944 he was readmitted to the French Hospital, complaining, as the record discloses, of "chest pain, Anterior and Posterior, intermittent, 3 days duration." He was hospitalized for five days. The abstract of the hospital record respecting that period of confinement states, "impression made on admission was Angina Pectoris."

He was admitted to the French Hospital for the third time on February 26, 1949, and remained there until March 3, 1949. The hospital record for that period reports "Impression;—Anginal syndrome. Arteriosclerotic heart disease. Acute coronary insufficiency."

His fourth admission to the French Hospital occurred on March 23, 1950 and he remained there until June 1, 1950. The hospital report covering that period, dated November 22, 1950, states, "Patient's condition improved with bed rest and medication. Discharged June 1st. Admission diagnosis Coronary occlusion. Anginal syndrome."

The plaintiff was also hospitalized at the Doctor's Hospital in New York from February 9, 1950 to February 24, 1950; September 5, 1950 to September 9, 1950; February 3, 1951 to February 20, 1951; January 29, 1952 to February 8, 1952; August 21, 1953 to September 4, 1953; August 10, 1954 to August 20, 1954 and August 17 to August 24, 1956. In each of the hospital reports covering those visits the diagnosis was either coronary heart disease, coronary arteriosclerosis, arteriosclerotic heart disease, coronary occlusion or anginal syndrome.

The plaintiff was under the care and treatment of Dr. Johnson for his heart condition from October 2, 1944 to February 2, 1951. He visited the doctor twice or more each month during that period. On February 8, 1945 Dr. Johnson wrote to the plaintiff's wife as follows, "I can say that it will be impossible for Mr. Frischman to return to work within less than three months and probably not then. He has responded so poorly to his routine of rest that I cannot be very optimistic about a rapid cure." On February 11, 1945, April 26, 1945, May 23, 1945 and December 10, 1946 he signed reports as the plaintiff's attending physician, as well as a certificate and statements to the New York Life Insurance Company on the plaintiff's claim for disability benefits, in which he stated that plaintiff was suffering from coronary thrombosis, that he would be unable to engage in any gainful occupation for an indefinite period, that he was suffering severe precordial pain on slight exertion, and that his prognosis was poor.

The plaintiff was examined on December 16, 1944, February 5, 1946, April 30, 1947, and August 30, 1948 by a Dr. Henry M. Ellen, who, on October 10, 1945, sent a report to the plaintiff's wife wherein he stated that the plaintiff "should under no circumstances be permitted to go to work. Exertion of any type would affect his cardiac condition."

Dr. Ellen submitted to the New York Life Insurance Company on February 5, 1946, April 30, 1947 and August 30, 1948 statements as plaintiff's attending physician, in which he stated that the plaintiff was suffering from coronary thrombosis, that his prognosis was poor, that he was unable to engage in any work, occupation or business, and that he could fix no definite date as to when plaintiff would be able to engage in such work.

Beginning in May, 1948 the plaintiff was treated by Dr. Michael Iserman. He visited or was visited by this doctor 39 times from May to December, 1948, 49 times in 1949, 44 times in 1950, 30 times in 1951, 17 times in 1952 and 8 times in 1953. Dr. Iserman submitted certificates to the New York Life Insurance Company on November 7, 1949, January 13, 1950, and November 20, 1952 in which he stated that the cause of plaintiff's disability was anginal syndrome, coronary heart disease and coronary occlusion, 1944; that he was unable to engage in any full or part-time gainful employment, and that it was indefinite as to when he might be able to resume any kind of work.

On July 18, 1956 the plaintiff filed a questionnaire respecting the establishment of a period of disability with the Department of Health, Education and Welfare, and on August 6, 1956 he filed an application to establish a period of disability under Section 423 of Title 42 U.S.C.A., which went into effect on August 1, 1956. On October 25, 1956 he filed a statement with the Department of Health, Education and Welfare wherein he stated that he became ill on October 2, 1944 and "Began receiving Disability Insurance payments for that month from an Insurance company with whom I was insured against Disability."

His application was denied on the ground that he had not met the earnings requirements of at least twenty quarters of coverage in the forty consecutive quarters ending with the quarter in which the disability began (stated as October 2, 1944), with at least six of those quarters of coverage in the last thirteen quarters ending with the quarter in which the disability began, as provided for in Section 416(i) (3) of Title 42 U.S.C.A.

The plaintiff requested a hearing before a Referee of the Department which was held on September 11 and September 19, 1957. The Referee, in his decision dated September 30, 1957, found that the plaintiff had last met the earnings requirements set forth in Section 416(i) (3), supra, in the quarter ending December 31, 1944, but had "failed to establish that his disability was of such severity as to preclude him from engaging in any substantial gainful activity prior to the expiration of the period in which he met the earnings requirements (i. e. December 31, 1944), and continuing until the date of the filing of the claimant's application for the establishment of a period of disability (i. e. August 6, 1956) within the meaning of Section (i) of Social Security Act, 42 U.S.C.A. 416(i)."

The Council granted plaintiff's request for a review of the Referee's decision and on November 17, 1958 denied his request for disability benefits. The Council found that the plaintiff had last met the earnings requirements set forth in Section 416(i) (3), supra, in the third quarter of 1944, ending on September 30, 1944, but that he had "failed to establish that he became unable to engage in any substantial activity at some time prior to October 1, 1944 and that such disability continued without interruption thereafter until at least August 6, 1956." The plaintiff then commenced this action.

It is well settled that the plaintiff had the burden of establishing his

right to relief in the administrative proceedings before the Social Security Administration. See Normant v. Hobby, D. C., 124 F.Supp. 489 and Thurston v. Hobby, D.C., 133 F.Supp. 205. I am mindful also of the fact that under Section 405(g) of Title 42 "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

The question to be decided, then, is whether the decisions of the Referee and the Appeals Council, finding that the plaintiff was not continuously disabled from September 30, 1944 to August 8, 1956, are supported by substantial evidence.

Disability is defined in Section 416 (i) (1) of Title 42 as follows: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The Appeals Council stated (see page 10 of the transcript of the record) "That the claimant was incapacitated on September 29, 1944 (while he still met the earnings requirements of Section 216 (i) (3) of the Act) and that he remained so continuously thereafter for several months is evident, we think, from the fact that his sudden illness on that date was followed by five weeks' hospitalization, after which, it may be assumed, he needed an extended period of convalescence during which he could not have been expected to work." And, further, that "If it were clearly established that the claimant not only became unable to work on or before September 29, 1944, *as we believe to be the fact* but that continuously from that time to August 6, 1956, when he filed his application, he remained unable to work; it would be possible to hold him entitled to the establishment of a period of disability." (Emphasis supplied.)

The Referee, in his decision, reached the conclusion that the plaintiff's inability to engage in gainful work between the date of the onset of his illness,

when he still had met the earnings requirements, and the date that he filed his application for the establishment of a period of disability on August 6, 1956 was not continuous. Apparently his reason for this conclusion was the fact that the plaintiff was not hospitalized for the treatment of his illness between December 18, 1944 and February 26, 1949, for he stated at page 43 of the transcript "The acuteness of the claimant's coronary condition therefore *apparently subsided during the entire period from 1944 to 1949 so that during this period it must be assumed* that the claimant would have been able to engage in a sedentary type of work." (Emphasis mine.)

The Referee made that finding despite the fact that there was in evidence before him Dr. Johnson's letter to the plaintiff's wife, dated February 8, 1945, wherein he stated that it would be impossible for the plaintiff "to return to work within less than three months and *probably not then.* He has responded so poorly to his routine of rest that I cannot be very optimistic about a rapid cure." (Emphasis added.) In addition, there were in evidence before him the reports filed by Dr. Johnson with the New York Life Insurance Company, dated February 11, 1945, in which he stated that the plaintiff was wholly disabled, and that "he is still having considerable pain on very slight exertion" April 26, 1945, in which he reiterated his previous findings and added "prognosis poor," May 23, 1945, wherein he iterated his previous findings, and stated that plaintiff's condition was "improved, but not very much", and December 10, 1946, in which he stated "His cardiac reserve is so low that very little activity cause (sic) anginal pain and dyspnea. Prognosis for returning to active work is poor." The Referee also had before him the report of Dr. Ellen, dated April 30, 1947, in which he said "Pt. gets attacks of Angina Pectoris on walking and exertion," and that his prognosis was "poor", and wherein he answered "no" to the question "Is he now able to engage

in any work, occupation or business?"; and his report of August 30, 1948, in which he said that the plaintiff had "Precordial pain, dyspnea, unable to walk much", prognosis "Guarded", and that he was still unable to engage in any work, occupation or business. The plaintiff was admitted to the French Hospital on February 26, 1949, suffering with "usual" pain in the chest following his carrying of a parcel of 40 or 50 pounds two days previously. *All* of the evidence submitted to the Referee points to the fact that the plaintiff's heart condition, between December 18, 1944 and February 26, 1949 had *not* subsided, and there was no basis in the record for his assumption that the plaintiff was able to engage in sedentary work.

The Appeals Council rejected the opinions of those doctors in the following language at page 12 of the transcript: "We cannot accept such circumstantial evidence, which is non-medical in character, as indicating anything more than that the claimant repeatedly sought and received medical advice or treatment because of pain which those doctors diagnosed as attributable to cardiac impairment. These physicians also, in certificates furnished a life insurance company, have expressed the opinion that such impairment made the claimant incapable of engaging in gainful activity. Pain, of course, is a subjective experience. Even where its existence is attested by the statement of a competent medical examiner whose many years of experience enable him to recognize malingering, such a statement is not objective medical evidence. Even if it were, it would afford no basis for measuring the degree of impairment resulting from pain in any given instance. The opinion of a physician regarding the ability of an individual to engage in gainful activity, likewise is not medical evidence. The courts have held that little importance can be attached to any conclusion of a doctor upon the ultimate question to be decided by us—i. e., whether the impairment shown to exist is such as to prevent the individual, in view of his residual physical capacities, his education and his work experience from engaging in any substantial gainful activity. (See United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273 [79 L.Ed. 617] (1934)."

That case, in my opinion, is inapposite. There the court, in rejecting the medical evidence, said 293 U.S. at page 506, 55 S.Ct. at page 276:

"The medical opinions that respondent became totally and permanenty disabled before his policy lapsed are without weight. *Clearly the experts failed to give proper weight to his fitness for naval air service or to do the work he performed,* and misinterpreted 'total permanent disability' as used in the policy and statute authorizing the insurance. Moreover, that question is not to be resolved by opinion evidence. It was the ultimate issue to be decided by the jury upon *all the evidence in obedience to the judge's instructions as to the meaning of the crucial phrase and other questions of law.*"

At page 507 of 293 U.S., at page 277 of 55 S.Ct., the court continued,

"There is nothing in the record that at all impairs the significance of the finding that in 1924 respondent was fit for service as an air pilot or of the work he performed after the lapse of the policy. These facts conclusively establish that he did not become totally and permanently disabled before his policy lapsed. Lumbra v. United States [290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492] supra. Falbo v. United States, 291 U.S. 646 [54 S.Ct. 456, 78 L.Ed. 1042]."

In the case at bar all of the evidence points to the plaintiff's disability from the time of the onset of his heart condition until his application for disability benefits. There is nothing in the record to show that he was able to engage in gainful activity during that period, and nothing to warrant the Referee's *assumption* that he was able to do sedentary work between 1944 and 1949 because he had not been hospitalized during that period. That was clearly controverted by

the medical reports hereinbefore referred to and by the plaintiff's testimony at page 82 of the transcript, when he testified as follows under questioning by the Referee:

"Q. Let me ask you this. What was your condition between 1944 and 1949? A. I had been advised not to work by the doctor—I couldn't move.

"Q. Did you have any attacks? A. Yes, sir.

"Q. Did you go to the doctor in 1949? A. Yes, sir.

"Q. Did you go to the doctor between 1944 and 1949? A. Yes, sir, quite a number of times."

In my opinion the language of Circuit Judge Knoch in the case of Teeter v. Flemming, 6 Cir., 270 F.2d 871, is applicable here. Judge Knoch said, at page 874, "The Social Security Statute does not require applicant to be completely helpless, but to be unable to engage in substantial and gainful activity (commensurate with his age, educational attainments, training experience, mental and physical capacities) by reason of a medically determinable physical or mental impairment. Aaron v. Fleming, D.C. Ala.1958, 168 F.Supp. 291, 295.

"The activity in which applicant must be able to engage must not only be gainful but substantial. Dunn v. Folsom, D.C.Ark.1958, 166 F.Supp. 44, 49.

"The expert opinion of Dr. Morris as to disability and inability to engage in any substantial, gainful employment, was admissible evidence for consideration by the referee and not, in itself, binding on him. But as it was not controverted by substantial evidence to the contrary, the referee's adverse decision on the ultimate fact was properly set aside. Hill v. Fleming, D.C.Pa.1958, 169 F. Supp. 240, 245."

█ In the case at bar the expert opinions of the various physicians whose reports were included in the transcript of the record before the Referee and the Appeals Council were admissible in evidence. Of course, as was stated by Judge Knoch in the Teeter case, supra, they were not binding on them. However, as in the Teeter case, they were not controverted by any substantial evidence to the contrary.

█ It is my opinion that the decisions of the Referee and the Appeals Council denying disability benefits to the plaintiff were not supported by substantial evidence and should be set aside. Accordingly, plaintiff's motion for summary judgment is granted, and that of the defendant is denied.

Settle order on notice.