Regep OSMAN, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.

Civ. No. 20451.

United States District Court
E. D. Michigan, S. D.

July 24, 1961.

Rosin & Kobel, Detroit, Mich., for plaintiff.

Lawrence Gubow, U. S. Atty., Detroit, Mich., for defendant.

KAESS, District Judge.

The facts in this case are undisputed. The plaintiff is a 72-year-old alien who came to the United States from Albania in 1915. He was thereafter convicted of two crimes involving moral turpitude and on February 14, 1956 plaintiff was ordered deported, pursuant to 8 U.S.C.A. § 1251(a) (4). However, the execution of this deportation order was suspended because the United States did not have diplomatic relations with Albania.

During the deportation proceedings, plaintiff released his immigrant identification card (Form I–151) to the Immigration and Naturalization Service. Plaintiff thereafter received a Form I–222 identification card, which certified "that Regep Osman was under an order of supervision on April 18, 1958", and is "evidence of registration by supervised alien".

Plaintiff, an illiterate, in reliance upon a friend's advice, erroneously believed that his new identification card, similar in appearance to the one he had surrendered, entitled him to leave the United States and enter Canada. Plaintiff was thereafter mistakenly admitted to Canada, on the basis of this card, on May 1, 1958, but upon seeking re-entry the same day (after a visit of one-half hour) he was refused admittance to the United States.

A hearing was held on May 1, 1958 before a Special Inquiry Officer, who ordered plaintiff's exclusion from the United States as an alien who had been deported, relying upon 8 U.S.C.A. § 1101 (g). The Board of Immigration Appeals dismissed an appeal on June 4, 1958. The plaintiff, however, was re-admitted to the United States on parole on June 11, 1958 for humanitarian reasons and because of an outstanding agreement with Canada, requiring that an alien in his status be accepted back into the United States.

The Attorney General of the United States notified the Bureau of Old Age and Survivors Insurance that the plaintiff was deported to Canada on May 1, 1958 and the Social Security payments, which plaintiff had been receiving, were terminated, in accordance with 42 U.S.C.A. § 402. The Appeals Council of the Department of Health, Education and Welfare, Social Security Administration, affirmed the decision of the Hearing Examiner who denied relief to the plaintiff. Plaintiff here seeks a review of this final order.

Pertinent portions of 42 U.S.C.A. § 402 (n) (1) read as follows:

"If any individual is * * * deported under * * * section 1251 (a) of Title 8 then, notwithstanding any other provisions of this subchapter—

"(A) no monthly benefit * * * shall be paid to such individual * * * for any month occurring (i) after the month in which the Secretary is notified by the Attorney General that such individual has been so deported, and (ii) before the month in which such individual is thereafter lawfully admitted to the United States for permanent residence."

The issue in this case is whether the plaintiff, as a matter of law, was "deported" to Canada, within the meaning of this section. Cross-motions for summary judgment have been filed.

Before discussing this issue, we note that the defendant attempted to "pass the buck" by claiming that the Secretary of Health, Education and Welfare, in accordance with the above statutory provision, merely performs a "ministerial act" in discontinuing benefits upon receiving deportation notice from the Attorney General. Thus, it is claimed that plaintiff should proceed with this issue before the Immigration and Naturalization Service of the Department of Justice.

We cannot accept this argument for a number of reasons. There is no indication in the above statute that the Attorney General's decision, as to the status of the individual, is determinative and final. In fact, it appears the Attorney General is mentioned only in that portion concerning the time of the effective termination of Social Security payments. Also, since the plaintiff has been re-admitted into the United States, there is no corrective action to be taken by the Attorney General.

Moreover, this is a question of law which shall be decided by a reviewing court, 5 U.S.C.A. § 1009(e), Dunn v. Folsom, D.C.1958, 166 F.Supp. 44. We cannot accept the argument that since an administrative agency relies on the interpretation of another agency on a matter of legal interpretation, a judicial review is likewise so bound. We cannot halt such reliance, but whenever judicial review is accorded from a final administrative decision, in this case under 42 U.S.C.A. § 405(g), a court must decide all legal issues which are presented and relevant.

Plaintiff claims that deportation is, as a matter of law, the equivalent of banish-

ment or exile, which connotes permanent separation from the country of former residence. Fong Yue Ting v. United States, 1893, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905. Since plaintiff did not intend to permanently separate himself from the United States when he went to Canada, it is argued that he was not "deported". However, it may be argued "deportation" is a word that must be construed in accordance with the statutes involved.

8 U.S.C.A. § 1253 contains the following statement:

> "No alien shall * * * designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States * * * unless such alien is a native, citizen, subject, or national of, or had a residence in such * * * foreign contiguous territory * * *"

■ The United States could not have deported plaintiff to Canada. He could not have asked to go to Canada. Moreover Canada would not, in any case, accept plaintiff as a resident. The entire matter appears to have arisen as a mistake, both on the part of the plaintiff and on the part of the Canadian immigration officer who permitted plaintiff to enter Canada.

Defendant insists that this case is controlled by 8 U.S.C.A. § 1101, which states:

> "(g) For the purposes of this chapter any alien ordered *deported* * * * who has left the United States, shall be considered to have been deported in pursuance of law, *irrespective* of the source from which the expenses of his transportation were defrayed or of *the place to which he departed.*" (Italics supplied.)

Defendant's argument appears to be that even though plaintiff could not have been deported to Canada by the government, since he actually left the country to go to Canada, he "technically" deported himself under this section, since he was under an order of deportation at the time.

■ The court notes that the above-quoted paragraph defines deportation with the qualifying language "For the purposes of this chapter". The above definition is thus not binding on any other chapter, such as the one relating to the Public Health and Welfare, Title 42 of the United States Code. However we do not suggest that the Social Security Administration make a separate finding as to the presence of a "deported" status in every case. They may still rely on the Attorney General but with the following qualification.

■ In this case the Attorney General, in the exercise of his broad administrative powers, did see fit to place the plaintiff and the government *in status quo*, the same position and relationship that existed prior to the plaintiff's one-half hour visit to Canada. Both the government and the plaintiff are foreclosed from claiming that the plaintiff's status at any time since his departure or alleged deportation is or has been any different than it was immediately prior thereto.

Therefore, in such a case as this, as soon as the Social Security Administration is notified of such action by the Attorney General, it too is foreclosed from challenging the fact that there has not been any change in the status of the parties.

Furthermore, it is clear that the Supreme Court did not consider the plaintiff to be in the class excluded under 42 U.S.C.A. § 402(h) (1), Flemming v. Nestor, 1959, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed. 2d 1435. The court in that case decided that the "deported" classification was not arbitrary and lacking in rational justification and thus did not violate the Due Process Clause of the Fifth Amendment. It said in this connection, 363 U.S. at page 612, 80 S.Ct. at page 1373:

> "The fact of a beneficiary's residence abroad—in the case of a deportee, a presumably permanent residence—can be of obvious relevance to the question of eligibility. One benefit which may be thought to accrue to the economy from the So-

702

cial Security system is the increased over-all national purchasing power resulting from taxation of productive elements of the economy to provide payments to the retired and disabled, who might otherwise be destitute or nearly so, and who would generally spend a comparatively large percentage of their benefit payments. This advantage would be lost as to payments made to one residing abroad."

Certainly the Supreme Court considered a person is not subject to Social Security payments if he is "deported" and not allowed reentry into the United States. Since plaintiff was allowed to reenter and resume his former status, the United States cannot now claim he was "deported" within the purpose of this chapter.

Plaintiff's motion for summary judgment is granted. A proper order, in accordance with this decision, may be submitted by counsel.