Mary E. HOCKENBURY

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare.

Civ. A. No. 28950.

United States District Court
E. D. Pennsylvania.
Nov. 27, 1961.

This proceeding was then instituted for review under § 205(g) of the Act, 42 U.S. C.A. § 405(g), which provides that "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

■ The basic facts which are not in dispute disclose that the plaintiff was born on October 12, 1902, and achieved an eighth grade education; that she worked as a burler (carpet mender) for thirty-eight years and worked with one employer over a period of twenty-five years; that she has performed no other type of work except that mentioned aforesaid for over a period of thirty-eight years and has not acquired any hobby nor has she taken any specialized schooling in any other field of endeavor.

In December of 1955, plaintiff fractured her right hip as a result of a fall at her place of employment and was hospitalized for three weeks. A pin was inserted and thereafter she used a wheelchair, crutches and a cane for a period of ten months until she was able to return to her original employment. In October of 1956, she returned to work and was able to perform her usual duties until October of 1957 when the hip became extremely painful and required a further operation, a prosthesis, because of the nonunion of the pin in her hip. Following this second operation, she attempted to return to her original place of work but was unable to find employment there because of her inability to stand, sit or walk for any period of time, and for the further reason that she was unable to travel from her home to her place of employment. In addition to the serious injury to her hip, she has suffered from high blood pressure and has been treated for that condition for a period of ten years by her family physician, Dr. J. Irving Schwartz.

On March 4, 1959, Dr. William A. Tomasco, who had treated plaintiff for her hip injury, stated in a written report that there were indications of a nonunion

Martin A. Ostrow, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., by Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

WOOD, District Judge.

On February 16, 1959, plaintiff filed with the Bureau of Old Age and Survivors Insurance of the Social Security Administration, Department of Health, Education and Welfare, applications to establish a period of disability and for disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act, as amended, 42 U.S. C.A. §§ 416(i) and 423, which were disallowed by the decisions of the Referee on June 22, 1960. The Appeals Council denied plaintiff's request for a review of the Referee's decision on October 19, 1960, and this then became the official act of the Secretary.

and necrosis (gangrene) of the femoral head (head of the thigh bone) and that a metal prosthesis was inserted October 7, 1957. He further found that at the time of his examination she had atrophy in the right thigh and calf and a ½ inch shortening of the leg; that she was unable to walk any distance and had difficulty in going up stairs. He concluded that as of that time in 1959, plaintiff was totally disabled due to the condition of the right leg and her difficult hypertension, and that her condition was static.

Dr. Stephan A. Christides (an orthopedist) who examined plaintiff on April 8, 1959, recorded that plaintiff was able to return to work ten months after her original operation but that her hip became worse; that after insertion of the prosthesis the plaintiff had had to use a cane to walk. He further found that plaintiff walked with a cane, limped excessively on the right leg, and that it was one-half inch longer than the left but that there was no atrophy. He further found:

> "It is unfortunate that this woman so well preserved cannot resume her previous activities as a carpet mender. She is a strong and intelligent woman with at least 10 years of active working life ahead of her. She can have a sitting job and I believe if she can learn sewing this will be an ideal job for her in the future. She is able to walk six square blocks without pain or discomfort and climb up and down the bus with ease. * * *" [Record p. 87.]

On July 16, 1959, Dr. Henry S. Wieder, Jr., to a large extent confirmed the former treatment of the plaintiff and concluded that plaintiff might undertake any type of work which permitted her sitting at the job or standing for short periods.

Dr. Oscar Corn agreed with the findings of the other doctors as to physical disability. He further found that she was totally disabled from doing work requiring any prolonged standing or any degree of walking, and he further stated that she was disabled by the fact that she was unable to handle the rigors of using public transportation.

Dr. J. Irving Schwartz reported that plaintiff, although primarily under the care of an orthopedist, which he was not, had been treated by him for hypertension and the nonsurgical aspects of her fracture and convalescence. He further stated, interestingly enough, that unquestionably this woman could not do the work for which she had been trained for many years and that for all practical purposes, she was unemployable.

Finally, Dr. H. L. Fittingoff provided a report of a complete examination made on November 2, 1959. He agreed that the right leg was found to be one-half inch longer than the left and that movement of the right hip elicited complaint of pain and that there was restriction in the motion of the hip joint. He further concluded that pain in the right hip joint was probably the result of fairly extensive degenerative changes. In the opinion of this doctor, that while admittedly she could not return to her former occupation, he believed that she could perform some type of work that did not require her to stand or walk.

Lay testimony revealed that this woman, who was fifty-five years of age in 1957 when she filed her original application, lives alone in a trailer in a rural community, some distance from adequate bus or rail transportation; that she has had eight years of schooling, and can read and write adequately; that at the present time she has no knowledge of sewing or any other occupation which would gain her a livelihood; and giving the greatest latitude to the testimony of all of the doctors, both pro and con, and to the position of the Examiner in this case, admittedly she can do nothing which will require her to stand or walk except for very short periods of time.

What the Examiner and the experts in this case who referred to "sedentary" occupations meant, we are not able to completely understand. The rule of law in these cases which come before us as expressed by the examiners repeatedly seems to be that if the person involved can do anything at all and is not a hopeless mental or physical wreck, then he

is not entitled to the benefits of the Act. This we do not believe is the purpose of the Act nor the intention of the Congress which passed it.

We have not reduced all of the facts in this case to this opinion because it would be burdensome to do so, but have attempted to recite those which give the greatest weight and support to the conclusion of the Examiner, who found, inter alia:

> "On the entire record the examiner is of the opinion that the claimant's musculoskeletal impairment has not been so severe that it precluded any and all forms of substantial gainful activity at any time prior to February 16, 1959." [Record p. 17.]

He of course fails to state what the sedentary job would be and since one doctor injected the word "sewing" into one of his reports, he presumably means that. The question is that even assuming this woman could sew, and the evidence indicates that she has no knowledge of that whatever, would such employment in the trailer in which she lives be available to her. The Referee admits that she cannot use transportation and in that regard, states as follows:

> "If the claimant lived within walking distance of a place of employment, or could obtain transportation in the private automobile of a friend or neighbor, or lived in a small town where the buses were not crowded, her problem would apparently disappear." (Record pp. 17, 18.)

The problem is, however, that she does not live under such circumstances and there is no reason to believe that she will be able to live anywhere else or that she has the means to move or that she can acquire any of the means of transportation to which he refers. The Referee further states:

> "Moreover the need for uniformity of application of the Act requires that identical findings be made with respect to identical impairments, irrespective of whether the claimant lives in Philadelphia or in 'Milltown.'

Indeed, a contrary rule would permit circumvention of the Act since it would enable individuals with limited traveling ability to obtain disability benefits by the simple expedient of moving to a community with congested transportation facilities. Surely this result was not intended by Congress. For these reasons, the Examiner finds that the claimant's inability to utilize certain forms of transportation does not require a finding of disability." [Record p. 18.]

The difficulty with these assumptions is obvious since the facts on which they are based do not exist. This unfortunate woman lives in a trailer alone; she is totally uneducated except for the eight years of school referred to; she has no experience or education or employment training which will help her in any field whatsoever, as appears clearly from this record. The Examiner's results are based wholly on imagination. He assumes that by some fortuitous circumstances this woman will be able to learn how to sew and that people will bring work to her trailer to be done and from that she will be able to maintain herself. The Examiner in his report cites Ussi v. Folsom, D.C., 157 F.Supp. 679, affd. 254 F.2d 842 (2 Cir.). He quotes from that case as follows:

> " 'Only those individuals who are totally disabled * * * may qualify * * * The impairment must be medically determinable and preclude the individual from performing any substantial gainful work. * * The individual must be disabled not only for his usual work but also for any type of substantial gainful activity.' " [Record p. 16.]

And he further states from that case as follows:

> " '* * * it cannot reasonably be anticipated that the impairment will, in the foreseeable future, be so diminished as no longer to prevent substantial gainful activity.' " [Record p. 16.]

He goes on to say:

> "Applying the foregoing 'stringent standards' (Ussi v. Folsom, supra) the Examiner finds that although the claimant has certain impairments, the record fails to establish that they were sufficiently severe, at any time prior to February 16, 1959, to satisfy the statutory standard, i. e., to prevent any and all forms of substantial gainful activity." [Record p. 16.]

Whether the standards set forth are stringent we do not care to comment upon. The fact remains that from the standards set forth in this Circuit and from the standards set forth in the case referred to by the Examiner, in our opinion the record clearly shows beyond any question that the severe injuries which this woman has suffered, her physical impairment, her educational background, her employment record and all other facts which we think it necessary to take into consideration lead to only one conclusion—that her physical condition is such that she cannot perform any substantial gainful activity based on the record as disclosed in this case.

■ This case is on all fours with the recent decision rendered by our late colleague Judge Egan in Ferricks v. Flemming, 188 F.Supp. 656 (E.D.Pa.1960). As stated by Chief Judge Biggs of our United States Court of Appeals for the Third Circuit in Klimaszewski v. Flemming, 176 F.Supp. 927, 932 (E.D.Pa. 1959):

> "* * * The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

We think the language of the Court in Dunn v. Folsom, 166 F.Supp. 44, 48 (D.C. Ark.1958), is particularly applicable here.

> "* * * But the act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the act would be utterly futile if 'any substantial gainful activity' means activity utterly beyond the capacity of the particular person involved. 'Any substantial gainful activity' is such activity for which the particular claimant is reasonably qualified by education, training, or skill."

Furthermore, the language of Judge Egan in the Ferricks case, supra, seems to meet the situation as well as can be expressed by us.

> "* * * this ignores the facts of life as they apply to a crippled woman with an 8th grade education, now 58 years old. The field in which she may seek employment of her present capabilities is so narrow as to be practically nonexistent." (188 F. Supp. p. 659)

We find it unnecessary to refer to the many other cases referred to by plaintiff and the Government in the able briefs and argument submitted on both sides, since, as we have stated, we feel that the Ferricks case, supra, and the Klimaszewski case, supra, set forth the rule in this Circuit and that the facts on the record clearly warrant judgment in favor of the plaintiff. Both sides have moved for summary judgment and since the above constitutes our findings of fact and conclusions of law, the defendant's motion for summary judgment will be denied. Plaintiff's motion for summary judgment will be granted.