Abraham RIBICOFF, Secretary of Health,
Education and Welfare, Appellant,

v.

Ira HUGHES, Appellee.

No. 16716.

United States Court of Appeals
Eighth Circuit.

Dec. 1, 1961.

Marvin S. Shapiro, Atty., Dept. of Justice, Washington, D. C., made argument for appellant. William H. Orrick, Jr., Asst. Atty. Gen., William H. Webster, U. S. Atty., St. Louis, Mo., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., were with him on the brief.

Paul B. Rava, St. Louis, Mo., made argument for appellee, and Robert Nagel Jones, St. Louis, Mo., was with him on the brief.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment in an action brought by Ira Hughes against the Secretary of Health, Education and Welfare under Section 205(g) of the Social Security Act, as amended (42 U.S.C.A. § 405(g)), to obtain a review of a final decision of the Secretary disallowing the plaintiff's claim for a "period of disability" under Section 216 (i) (1) of the Act (42 U.S.C.A. § 416(i) (1)) and for disability insurance benefits pursuant to Section 223 of the Act (42 U.S.C.A. § 423). The judgment reversed the decision of the Secretary and remanded the cause with directions that the plaintiff's claim be allowed and that such benefits be granted to him as he would have been entitled to had his application been allowed.

The application of the plaintiff, filed March 13, 1957, with the Bureau of Old-Age and Survivors Insurance, of the Social Security Administration, was

based upon the claim that he had been unable, because of a disability due to a back injury, to engage in any substantial gainful activity since May 15, 1951, when he was 46 years of age, and that, under the Social Security Act, he was entitled to the allowance of a "period of disability" and to disability insurance benefits. Initially, and upon reconsideration at the plaintiff's request, the Bureau disallowed the claim on the ground that he had not satisfactorily established that he was disabled within the meaning of the Act.

To establish a "period of disability" and entitlement to disability insurance benefits, an applicant such as the plaintiff must prove "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C.A. § 416(i) (1); 42 U.S.C.A. § 423(c) (2).

Social Security Administration Regulations No. 4, as amended 1957, § 404.-1501(g), 22 F.R. 4362, 20 C.F.R. (1949 Ed.) § 404.1501(g), reads as follows:

"Impairments which are remediable do not constitute a disability within the meaning of this section. An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

The plaintiff challenged the rejection of his claim by the Bureau and requested a hearing before a Referee of the Social Security Administration. At that hearing which was held on July 29, 1958, at Moberly, Missouri, the plaintiff was the sole witness. The entire evidence consisted of his testimony and certain documents and doctors' reports.

The evidence of the plaintiff showed that he was born in 1904; that he went to country school and had a sixth grade education; that he has a wife and three children; that until he was about thirty years old he did farm work with his father; that the first time he hurt his back was when he fell down a mine shaft while working for his uncle; that he never got over that back injury; that he could do light work; that after he left the farm, at about the age of 30, he worked in Kewanee, Illinois, in a valve and fitting factory "a year or so"; that he subsequently went to Texas and worked in an aircraft factory during the war; that his job was inspecting parts; that it ended when the war was over; that he then came back on the farm with his father; that he got a job in a shoe factory at Brookfield, Missouri, staining the soles of shoes, from about 1946 or 1947 to about the summer of 1951, when he became sick, and on advice of his doctor quit the factory; that he was employed at a saw mill, where he sorted out wood, and was paid a dollar an hour; that at the end of three days he was struck on the right hip by a piece of wood kicked by a power saw, and was knocked "in a twist"; that this was in May 1951; that he made a claim for Workmen's Compensation, which was resisted and eventually settled; that it was about a year before he got it; that he did not try to work until after the settlement; that he worked as a school janitor in the last part of 1952 and up to the spring of 1953; that he had to quit because he "couldn't take it"; that he tries to mow the lawn or work around the house; that he has an ache and arthritis and gets nervous; that he can go out and do something, but his back will get to hurting; that he drove a borrowed car to the hearing before the Referee; that he had no one else to drive; that driving tears his nerves "all to pieces."

Plaintiff's evidence also showed that he was being paid $55 a month by the Missouri Department of Public Welfare; that that Department had sent him to various doctors; that his wife works as a clerk in a store for about $30 a week; that his wife's earnings and his welfare checks are his only income; that his worst disability is his back; that the

"medical team [of the Missouri Department, Division of Welfare] wouldn't have approved" his application for welfare payments on the basis of permanent and total disability "if there'd been any cure" for his back; that his disability is "supposed to be permanent," which means "no cure"; that he has colon trouble and has "doctored it and doctored it" and is on a permanent diet for his colon; that his appetite comes and goes; that his weight is about normal; that even his own children bother him; that he would have to think about submitting to surgery. The plaintiff was asked by the Referee whether he believed he "could do some kind of sedentary work sitting down." His answer was: "I get more nervous sitting around the house, I do. I have to get up and get out * * *." Asked what he did with his time, he said:

"Oh, I just walk up town, and in fact, like I told my wife, it's quite a proposition. A lot of people might think—of course, I'll walk down to the electric shop, you know, or maybe go over to the park, they have a little park where they play baseball. It used to be I could drive. I got to where I got so nervous I didn't want to drive."

There is more of plaintiff's testimony about himself, his back, and his inability to do anything either substantial or useful. Enough has been recited, we think, to show his capabilities, the kind of person he is, and his potentialities, if any, for any substantial gainful activity.

A report of a Field Representative of the State Division of Welfare of Missouri, dated February 21, 1958, shows that an application of the plaintiff for permanent and total disability was rejected by the Division in 1954; that two applications were rejected in 1955; and that he was "approved" in March 1956. It appears from a record of the State Division of Welfare, dated March 22, 1956, that a Medical Review Team of that agency certified that the plaintiff "has a physical or mental disability which renders him permanently and totally disabled."

A number of medical reports were included in the evidence. We do not propose to analyze them. They are consistent with respect to the nature, existence and extent of plaintiff's back impairment and its disabling effect.

The Referee of the Social Security Administration, whose decision became the final decision of the Secretary of Health, Education and Welfare, stated his conclusion as follows:

"The medical evidence shows that claimant has an impairment of the back and the referee is constrained to find that such condition can be improved by surgery and is therefore remediable. However, disregarding the remediability feature, the evidence does not show that the back condition is of such severity as to preclude claimant from following some type of substantial gainful activity. The limitation of motion of the spine is not marked in any direction, and claimant did not demonstrate that he had a severe back pain. It is difficult to believe that a back pain of such severity as he described could be borne without resorting to aspirin or other pain-relieving medication. The claimant has demonstrated that he was able to obtain and follow employment involving sendentary or light manual labor following his most recent injury, and the medical evidence does not show that his impairment has progressed to the degree that he is unable to continue such type of employment. While he does meet the requisite of having a medically determinable impairment of some severity which is expected to be of long-continued and indefinite duration, he does not meet the requirement that there must be a present inability to engage in any substantial work by reason of such impairment. For the establishment of a period of disability an individual must be disabled not only for his usual work but also for any type of substantial gainful activity."

The Secretary does not now contend that the plaintiff's evidence and the reports of the doctors who examined him failed to prove that his present disability does not meet the essential requirements of the Act. The contention is that the disability is remediable within the meaning of the Regulation which provides that an individual will not be deemed disabled if "with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful employment."

There was medical evidence that plaintiff's back impairment might be remedied. Dr. Zuber, an orthopedist, concluded that the plaintiff, "because of the extensive trauma," was a candidate "for a fusion involving at least the last three lumbar vertebrae and the pelvis." Dr. Meyer, who diagnosed the plaintiff's disability as, "Old injury of the spine with congenital anomaly aggravated by fall," recommended as treatment "a lumbosacral fusion." Dr. Stewart, a specialist in orthopaedic surgery, who examined the plaintiff for the State Welfare Division in March 1956, had this to say in his report to the Linn County Welfare Office:

"* * * This man has a scoliosis of his entire lumbar spine consisting essentially of rotational proposition where the vertebral bodies are rotated probably as much as 35 to 40° and in addition to the old fractures which are inconsequential and which may well have come from the original injury. I don't know whether this rotation can be ascribed to the injury or whether the injury called attention to a preexisting deformity which the latter I believe is more likely.

"In any event with the films showing the situation as it is today and with his history, it seems to me the only logical thing for this man to do is to have an extensive lumbar spine fusion. At his age, fifty-one I believe, he could be rehabilitated and put back to gainful occupation.

"This could possibly be arranged through the Dept. of Vocational Rehabilitation and if you feel so inclined to refer him to that Department, I would suggest you use a copy of this letter as a basis for such referral."

Dr. Stewart's report was dated March 21, 1956.

The record of the State Division of Welfare, dated March 22, 1956, containing the certification that the plaintiff was permanently and totally disabled, also contained, under "Record of Referral for Medical Treatment or Rehabilitation," the following: "The final decision was that the large expense for hospital and doctors was not justified and they closed their case."

Judge Weber, who reviewed and reversed the decision of the Secretary, said:

"The claimant's work experience, age, proficiencies and education must must be considered in making a determination of whether the claimant is able to engage in any substantial gainful activity. Adams v. Flemming, [D.C.] 173 F.Supp. 873.

"This record does not support the finding by the Referee that the plaintiff is able to engage in any substantial gainful activity. To the contrary, the record discloses that the plaintiff is fitted only for manual labor and is precluded from it by his disability. The disabling effect of an impairment must be measured in the light of plaintiff's abilities and disabilities. Dunn v. Folsom, supra [D.C., 166 F.Supp. 44]; Aaron v. Flemming, [D.C.] 168 F.Supp. 291; Adams v. Flemming, supra; Jacobson v. Folsom, [D.C.] 158 F. Supp. 281. The activity which the plaintiff must be able to engage in must be a substantial one. Dunn v. Folsom, supra."

The judge concluded that the plaintiff had sustained his burden of proving that his disability was within the requirements of the Act.

We do not question the validity of the Regulation upon which the Secretary relies. It is its application to this particular plaintiff that concerns us. We think that there is an inadequate evidentiary basis for a determination that the plaintiff could engage in a substantial gainful activity, even if an "extensive lumbar spine fusion" might diminish his back impairment from a medical and surgical standpoint. We say this because our review of the entire record convinces us, as it evidently did the District Court, that the plaintiff's earning capacity and capability for engaging in any substantial gainful activity are negligible, if not nonexistent, regardless of whether his impairment is technically remedial or not.

The activity in which a disabled claimant can be found to be able to engage must be both substantial and gainful and within his capacity and capability, realistically judged by his education, training and experience.

In Klimaszewski v. Flemming, D.C. E.D.Pa., 176 F.Supp. 927, 932, Chief Judge Biggs, of the Court of Appeals for the Third Circuit, sitting as a District Judge by assignment, said:

"* * * The claimant's proof that he is not qualified to engage in any substantial gainful activity is not adequately countered by the [Social Security] Administration's suggestions of possible employment.

"The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary [of Health, Education and Welfare]. and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

See, also: Teeter v. Flemming, 7 Cir., 270 F.2d 871, 874, 77 A.L.R.2d 636; Kohrs v. Flemming, 8 Cir., 272 F.2d 731, 736; Dunn v. Folsom, D.C.W.D.Ark., 166 F.Supp. 44, 48; Sebby v. Flemming, D.C.W.D.Ark., 183 F.Supp. 450, 454.

Our conclusion is that there is an inadequate evidentiary basis for the decision of the Secretary which was reversed by the District Court.

The judgment appealed from is affirmed.